No. 31,138.

ELIZABETH ELLSWORTH, *Appellee* (Revived in the Name of ELSIE
M. TILDEN, Administratrix), v. C. A. SPRAY, *Defendant* (J. F.
SPRAY and L. H. SPRAY, *Appellants*).

(21 P. 2d 392.)

Opinion filed
May 6, 1933.

G. J. *Sharp* and C. B. *Crawley*, both of Howard, for the appellants.
*Clifford Sullivan*, of Howard, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: Elizabeth Ellsworth brought this action against
C. A. Spray, J. F. Spray and L. H. Spray, to recover on a promissory
note purporting to have been executed by the defendants on Octo-
ber 12, 1913. There were indorsements of the payment of interest
from time to time, until July 26, 1931. The original payee of the
note, which was transferred to Mrs. Ellsworth in 1924, was the
Moline National Bank. No interest payments were made for a time
after October, 1928, and when payment was demanded of the
Sprays they were told by one of them, "I can't pay it now." Later
when defendants were pressed for payment an extension agreement
was made. The agreement was procured by W. H. McNeal, repre-
senting the plaintiff, a woman eighty-two years of age. The fol-
lowing is the agreement of extension:

"MOLINE, KAN., March 6, 1931.

"For and in consideration of $25 to me in hand paid and in further consid-
eration of the promise of the undersigned to pay $50 on the first days of
April, May, and June, 1931, respectively, the principal and accrued interest on
the attached note for $1,040 is hereby extended to July 1, 1931. Upon failure,

however, of the parties hereto to pay the sums as herein specified when due, this agreement shall become null and void, and the undersigned owner of such note shall have her remedies at law the same as if this extension had not been made. Such payments as made shall be credited on such note in reduction of past-due interest.　　　　　　　Mrs. Elizabeth Ellsworth."

"We, the undersigned, agree to the terms and conditions of the foregoing extension, and agree that the amount of such note is $1,040 plus interest at 8 per cent since October 12, 1928.

C. A. Spray.
J. F. Spray.

"Witness: Wm. H. McNeal.

L. H. Spray."

When this action was brought, no defense was made by C. A. Spray, but J. F. Spray and L. H. Spray answered by denying that they ever signed the note and that they were induced to sign the extension agreement by reason of the representations of W. H. McNeal, the agent of plaintiff, and the threat that an action would be brought at once against all of said defendants unless they signed the extension agreement. They alleged that neither J. F. nor L. H. Spray ever saw the note until after this action was brought, and as soon as they examined it they found that the note had not in fact been signed by them or by either of them, and that the assertion of McNeal that they had signed the note was untrue. They further alleged that neither of them had ever paid any sum whatever upon the note until the extension agreement was made.

The case was tried with a jury on the issue of whether answering defendants had executed the note, and the finding of the jury was a verdict in favor of the plaintiff. It may be said that C. A. Spray made no defense and having been duly served with summons judgment went against him by default. J. F. Spray and L. H. Spray appeal.

Besides the note which was presented at the trial, Mrs. Ellsworth, the plaintiff, testified that J. F. Spray—when she spoke to him on one occasion of the note and a demand for its payment—said: "I can't pay it now." In October, 1929, J. F. Spray, in answer to a letter asking for payment on the note, wrote:

"Your letter received, and as I have been busy I neglected to answer it. It will be impossible for me to pay anything on that note at this time. I have just got through paying $1,225 on notes that I signed sometime ago, so it will be impossible now.　　　　　　　Yours Resp.　　J. F. Spray."

There was evidence of W. H. McNeal, a relative and representative of the plaintiff, a woman eighty-two years of age, that he applied to the defendants for payment of the note in March, 1931,

and told them that the plaintiff was in dire need of money and made an appeal to them for some payment. J. F. Spray said in substance, I am ashamed that payment of the note is past due and have regretted many times that it had not been paid, adding: "I am in no condition to pay it now, but we own an ice plant that we hope to sell the first of July, when the ice season starts, and we will pay the note out of the proceeds of that sale of the ice plant if and when sold." Mr. McNeal said: "There must be something done, there must be a definite understanding about payment. If something is paid on it each month it is not material that the principal should all be paid, as Mrs. Ellsworth can get along with a little money each month," and J. F. Spray said: "Well, we might be able to pay something on the note each month." Then the three Sprays and McNeal sat down in an office and proceeded to write out the extension agreement that has been quoted. McNeal prepared the agreement with the note in plain view of all of them, and in writing the agreement referred to the note in order to describe it and there was no suggestion by any of the defendants that the signatures were not genuine. When the writing was completed the Sprays signed it, whereupon J. F. Spray took $25 from his pocket and handed it to McNeal and the payment was indorsed on the note. In his testimony J. F. Spray acknowledged that he had paid the $25 on the note, saying: "We made arrangements to pay $50 a month," and apparently in pursuance of the agreement there were three monthly payments of $50 each, which were afterwards made in April, May and June of 1931, and another of $25 in July of that year.

There was the testimony of E. A. Chaffin, the cashier of the Moline National Bank, to which the note was originally given and which had later been transferred to plaintiff. He testified that he prepared the note for signatures, was present in the bank when it was signed and that it was signed by C. A. Spray, L. H. Spray and J. F. Spray.

There was testimony, too, of J. C. Shearman, a handwriting expert, and who, after comparison of the signatures on the note with the number of signatures on papers which were admitted to be genuine, gave his opinion that the signatures upon the note were in the handwriting of the persons whose signatures they purported to be. The note was executed in October, 1913, more than nineteen years before the judgment was rendered and had indorsed thereon thirty-two payments of interest, extending down to July, 1931.

After all these transactions, admissions and other testimony, the Sprays are here insisting that they had never signed the note and had not even seen it until after this action was brought.

Beyond question there was sufficient evidence to sustain the verdict of the jury. Indeed, it is hardly asserted by defendants that the verdict lacked adequate support in the evidence, but it is contended that errors were committed in the course of the trial.

First, it is insisted that the court erred in permitting an amendment of the petition during the trial. It had been alleged that the note was executed on October 12, 1913, the date named on the face of the instrument, and the only change made by the amendment was to write "on or about" that date. It is manifest that the amendment did not substantially change the claim of plaintiff. On the trial it appears to have been developed that October 12, 1913, was Sunday, and thinking a mistake was made in the date, and that it was unlikely to have been executed on that day, plaintiff asked for the amendment, which was granted. The issue in the case was, Did the defendants actually sign the note? And whether it was signed on the eleventh, twelfth or thirteenth of October was not material to the controversy. The statute, R. S. 52-206, provides:

"The validity and negotiable character of an instrument are not affected by the fact that: (1) It is not dated;" etc.

Since the absence of a date does not impair its validity, the particular day of October when it was executed was not important in view of the issue presented in the case, and we think the amendment made did not change or affect that issue.

Another complaint is that the court failed to give a requested instruction which was to the effect that if the note was not signed by defendants or with their knowledge and consent, the person signing it was guilty of forgery and no recovery can be had as against the appellants, or either of them, without regard to the extension agreement relied upon by plaintiff, because no suit can be maintained upon a forged instrument, and no subsequent agreement to pay interest on a forged instrument can be enforced. The court, after defining the issues presented by the pleadings and the contentions of defendants under them, stated that defendants contended that they were induced to sign the extension agreement by the representations of McNeal, that three of them had signed the note, and that as such a long time elapsed they were led to believe and rely on his representations although none of them could recall the transaction,

and to avoid a threatened lawsuit they did finally sign the agreement and did not discover until this action was brought that the note had not been signed by them or either of them.

After stating the contentions of defendant, the court instructed that the burden was on the plaintiff to prove that defendants did sign and deliver the note to the payee, and further that plaintiff is the owner of the note and that it or a part of it has not been paid, and if plaintiff has not established these facts she cannot recover, and the jury must find for the defendants. It is obvious that the real issue in the case was presented to the jury and that it was sufficiently stated without going into the details as to the law of forgery or its consequences. The rule has been stated that:

"Where the trial court's instructions adequately define the issues and state the pertinent law of the case, it is not error to refuse to submit to the jury instructions prepared and requested by either of the parties to the action." (*Hausam v. Poehler*, 120 Kan. 119, syl. ¶ 3, 242 Pac. 449.)

Another requested instruction refused related to the date of the note, a matter already discussed, and we think the criticism is without merit.

There is complaint, too, of instruction number six that was given, and is as follows:

"You are also instructed that it is not incumbent upon the plaintiff to prove that the defendants signed the note at any particular place, or upon the date as shown by the note, but it is sufficient if the plaintiff has established by a preponderance of the evidence that the defendants did actually sign the note in question; but the fact that the defendants were not present at the place where it is claimed that said note was signed, if such be a fact, or were not present at a particular place, where, and when, it is alleged that the note was signed, if such be a fact, may be considered by the jury as tending to show whether or not the defendants did sign the note."

A witness called by defendants testified that one of them was not in Moline, the place the note purports to have been signed, but was in Arizona, at that time on a trip to California. In view of that testimony and other of a similar kind, that the defendants were not present at a particular time, the court had reason to and took occasion to give the instruction, that if the defendants had signed the note, the place where or the date was not important, if the fact that it was signed was well established. In that connection the court added that:

"If you believe from the evidence that the defendants did not execute the note in controversy, that is, that they never signed the same, but that their

signatures were placed on said note without their knowledge or consent, then it will be your duty to find for the defendants."

There was no error in the giving of instruction number six.

Nor do we find error in instruction number eight, of which complaint is made. There the court referred to the extension agreement and directed the jury that the extension agreement was only to pay interest already due and unpaid upon the note when the agreement was made, and told the jury that they could only consider the agreement, "so far as it tends to show, if it does so tend to show, that the defendants recognized or admitted the existence of the note referred to therein, and of their liability thereon, and ratified the same." This instruction, too, was without error.

Some other objections were made that are not regarded as requiring any special comment.

Finding no error in the record, the judgment is affirmed.